OPINION *Page 2 
{¶ 1} Defendant-Appellant Christopher Yaun ("Yaun") appeals from the October 30, 2007 Order and Judgment Entry of Conviction of the Bellefontaine Municipal Court finding him guilty of Speeding as set forth in Ohio Revised Code section 4511.21(D) and ordering him to pay a fine of $25.00 plus costs.
 {¶ 2} This matter stems from events occurring on September 19, 2007 in Bellefontaine, Ohio. On this date, Yaun was traveling westbound on State Route 274. At this same time, Sergeant Kristina Bennett ("Bennett") of the Ohio State Highway Patrol was traveling eastbound on State Route 274. After observing Yaun's vehicle for approximately a quarter of a mile, Bennett activated her radar unit and clocked Yaun traveling at 70 miles per hour in a 55 miles per hour zone. Bennett then initiated a traffic stop whereupon she issued Yaun a traffic citation for speeding pursuant to R.C. 4511.21.
 {¶ 3} On September 26, 2007 Yaun filed a written plea of not guilty with the Bellefontaine Municipal Court. The court set this matter for trial on October 26, 2007. On October 1, 2007 Yaun entered a plea of not guilty, requested a pre-trial, and waived his right to have the matter heard within 30 days from the date of the traffic citation. The trial originally set for October 26, 2007 was subsequently continued, and this matter proceeded to a trial to the court on October 30, 2007. *Page 3 
 {¶ 4} At trial, the State presented the testimony of Sergeant Bennett who testified that she has been employed by the Ohio State Highway Patrol since July 25, 1997. Bennett testified that she was engaged in routine traffic patrol on September 19, 2007 at approximately 11:41 a.m. in Logan County. Bennett testified that at this time she was proceeding eastbound on State Route 274 when she noticed a commercial semi driving westbound approaching her. Bennett testified that she observed this vehicle (later determined to be Yaun's vehicle) for approximately a quarter of a mile and estimated that he was traveling at 70 miles per hour. Bennett testified that she activated her radar to track Yaun's speed and that the radar determined he was traveling at 70 miles per hour. Bennett testified that after Yaun's vehicle passed her patrol car she turned around, activated her overhead lights, and initiated a traffic stop on his vehicle.
 {¶ 5} Specifically regarding the radar equipment used in the present case, Bennett testified that she is certified to operate the Python II radar device and that her certification was current as of the date of Yaun's traffic stop. Bennett testified that she is required to complete yearly recertification training which includes a four-hour block of training, a written test, and a practical test. Bennett testified that part of her recertification requires her to accurately estimate the speed (within one or two miles an hour) of nine out of ten vehicles in a row. *Page 4 
 {¶ 6} Additionally, Bennett testified that prior to beginning each shift; she verifies the calibrations of the radar unit and also does so several times throughout her shift. Specifically, Bennett testified that prior to leaving the patrol post she visually inspects the radar antenna, and then turns on the radar unit whereupon the unit performs its own self-test and internal check to assure that everything is functioning properly. Bennett testified that she verified the radar unit's calibrations on September 19, 2007 at the beginning of her shift at 8:00 a.m. and again after making a traffic stop at 9:13 a.m. Bennett also testified that after each traffic stop, she performs tuning fork tests on the radar unit — two stationary tests and a moving test, and that she performed these tests prior to Yaun's traffic stop and again after Yaun's traffic stop. Additionally, after questioning by the court, Bennett testified that she is certified on the laser, the K-55 radar, the Python, and the Python II radar devices.
 {¶ 7} At the close of the State's case, Yaun moved for a Criminal Rule 29 Motion for Acquittal based upon the State's failure to lay a proper foundation to indicate whether or not the court heard expert testimony regarding the particular radar device at issue or that it is an accurate means for determining the speed of a vehicle. The court overruled Yaun's motion and the matter proceeded to Yaun's case in chief. Yaun declined to present evidence or testimony and the matter proceeded to closing arguments. *Page 5 
 {¶ 8} At the close of all the evidence, the trial court found Yaun guilty of the charge of Speeding in violation of R.C. 4511.21 and ordered him to pay a fine of $25.00 plus court costs in the amount of $56.50. This sentence was journalized by the trial court in its October 30, 2007 Order and Judgment Entry of Conviction.
 {¶ 9} Yaun now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED IN FINDING DEFENDANT-APPELLANT GUILTY OF VIOLATING OHIO REVISED CODE § 4511.21(D) WHERE THE COURT HAS NOT HEARD EXPERT TESTIMONY REGARDING THE SCIENTIFIC ACCURACY OF THE PYTHON II RADAR.
 {¶ 10} In his first assignment of error, Yaun alleges that the trial court erred in finding him guilty of R.C. 4511.21 in the absence of expert testimony regarding the scientific accuracy of the radar used by the Ohio State Highway Patrol officer.
 {¶ 11} The admissibility of readings from stationary radar devices was considered by the Supreme Court of Ohio in City of East Cleveland v.Ferrell (1958), 168 Ohio St. 298, 154 N.E.2d 630. In that case, the court acknowledged that the principles of the Doppler Effect, which underlie the operation of stationary radar devices, had been long established. Id. Additionally, the Supreme Court of Ohio concluded that "readings of a radar speed meter may be accepted in evidence, just as we accept photographs, X-rays, electroencephalographs, speedometer readings, and the like, without the necessity of offering expert testimony as to the scientific principles underlying them. Id. at 302-303, *Page 6 154 N.E.2d 630. See also City of Cincinnati v. McDaniel, 1st
Dist. No. C-070034, 2008-Ohio-703 at ¶ 6.
 {¶ 12} To convict a person for speeding using a moving radar device, the State must prove and the record must contain (1) expert testimony of construction of the device and its method of operation in determining the speed of the approaching vehicle, (2) evidence that the device is in good condition for accurate work, and (3) evidence that the officer using the device is one qualified for its use by training and experience. See State v. Wilcox (1974), 40 Ohio App.2d 380, 386,319 N.E.2d 615. Establishing the reliability of a speed-measuring device can be accomplished for future cases by (1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record. City of Cincinnativ. Levine (2004), 158 Ohio App.3d 657, 658 821 N.E.2d 613, citingAkron v. Gray (1979), 60 Ohio Misc. 68, 397 N.E.2d 429, State v.Doles (1980), 70 Ohio App.2d 35, 433 N.E.2d 1290, State v. Dawson (Dec. 21, 1998), 12th Dist. No. CA98-04-021.
 {¶ 13} Specifically regarding the radar device used in the present case, the State presented the testimony of Sergeant Bennett. Bennett testified that she estimated Yaun's speed to be 70 miles per hour prior to activating her radar device and clocking Yaun at the rate of 70 miles per hour. Bennett also testified that this *Page 7 
particular radar device was assigned to her, that it always stays in her assigned car, and that it is current in all of its checks by the radio technicians. Additionally, on cross-examination, Sergeant Bennett testified that she is certified to use laser radar units, that she is certified specifically to use the Python II radar unit, and that when the upgrade on this unit came in, she received all of the training on it and received her certification on it.
 {¶ 14} The trial court also questioned Bennett, whereupon the following exchange occurred:
 The Court: Sergeant, did I understand your testimony to be that you are required to recertify every year?
 Bennett: Yes, sir.
 The Court: And where do you do that recertification?
 Bennett: It's done post level.
 The Court: And who conducts it?
 Bennett: The sergeants do the troopers and either the training sergeant or the lieutenant does the sergeants.
 The Court: All right. And is this when you go through that procedure that I heard you describe where you have to estimate the speed of oncoming vehicles?
 Bennett: Yes, your Honor.
 The Court: Okay. The — the Python radar, as this a Doppler effect radar, or do you know?
 Bennett: It's exactly the same radar as the K-55 and the other Python. The radio techs said all they did really is give it a snappier name and put new stickers on it to sell more radar units is what the radar tech said basically. I'm not — it still operates under the same principles. *Page 8 
 {¶ 15} The trial court then allowed the parties to ask Bennett follow-up questions. Bennett testified that the unit used in the present case was the same unit for which she received her renewal certificate of training in May of 2007. Bennett also testified that "[w]e use my vehicle to do the recertification. And I'm certified on the laser, the K-55 radar, the Python, and the Python II." Bennett also testified that her radar unit operates on the Doppler principle.
 {¶ 16} Our review of the record reveals that the State presented substantial evidence, through the testimony of Sergeant Bennett, to establish that the radar device used in the present case was in good condition for accurate work. Additionally, we find that there substantial evidence and testimony presented regarding Sergeant Bennett's training and experience to demonstrate that she was qualified to use the radar device in the present case.
 {¶ 17} At the close of the State's case, Yaun moved for a Crim.R. 29 motion for acquittal alleging that the State failed to lay a proper foundation to indicate whether or not the court heard expert testimony regarding this particular radar device. In response to Yaun's motion, the trial court stated as follows:
 All right. You know, I think the Court can take judicial notice of those things that it has in fact heard and taken judicial notice of in the past. And according to the record, the Court has not heard any expert testimony on the operation or principles underlying of the Python radar; the Court has, however, heard expert testimony regarding — with regard to the Doppler radar in general, and in particular the K-55, which used the Doppler radar principle. *Page 9 
 The witness has testified that the Python operates under the same Doppler radar and principle . . . it is my ruling that there would be no reason to hear expert testimony on each and every model of Doppler radar. * * *
 The Court has heard expert testimony on the Doppler effect radar. That testimony's been in the context of a contested trial where the expert witness was subject to cross-examination, and based upon that, the Court has accepted, and in subsequent cases taken judicial notice of the reliability and limitations of the Doppler effect radar, and I will do so in this case as well. And, accordingly, I'm going to overrule your motion.
 {¶ 18} Contrary to Yaun's argument in his first assignment of error, we find that the trial court did not err or abuse its discretion in taking judicial notice of the radar device used in the present case. Our review of the record reveals that the court specifically noted that it had previously heard expert testimony on the Doppler effect radar, that it had subsequently taken judicial notice of the reliability and limitations of the Doppler effect radar, that Sergeant Bennett testified that the Python operates under the same Doppler radar and principle. It is the scientific principle underlying a device's reliability — and not the reliability of specific model — that renders judicial notice proper.State v. Wiest, 1st Dist. No. C-070609, 2008-Ohio-1433, ¶ 12.
 {¶ 19} Accordingly, as the Python radar device operates on the same Doppler effect principle as other radar devices, the trial court was not required to have previously heard expert testimony specifically on the Python. Therefore, the *Page 10 
trial court did not err in taking judicial notice of the construction and reliability of the radar device used in the present case.
 {¶ 20} Based on the foregoing, Yaun's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT ERRED IN FINDING DEFENDANT-APPELLANT GUILTY WHEN THE STATE FAILED TO PRESENT A COPY OF THE OFFICER'S CERTIFICATE ON THE USE OF RADAR DEVICE.
 {¶ 21} In his second assignment of error, Yaun alleges that the trial court erred in finding him guilty when the State failed to present a copy of the officer's certificate regarding her qualifications to operate the radar device. Specifically, Yaun argues that because the State failed to present the officer's certificate evidencing her qualifications to use the Python II radar, the radar device's readout should have been excluded and therefore there was insufficient evidence to find Yaun guilty of a speeding violation.
 {¶ 22} In support of his second assignment of error, Yaun directs this court's attention to our previous decision in State v. Helke, 3rd Dist. No. 8-07-04, 2007-Ohio-5483. In Helke, Sergeant Standley of the Bellefontaine Police Department testified that he was certified to operate the K-55 radar equipment and that he received that certification locally and at the State Highway Patrol. Id. at ¶ 9. However, we determined that "[w]ithout more, Standley's testimony *Page 11 
concerning his qualifications is insufficient to uphold a conviction for speeding based solely on the reading of a K-55 radar device. Because the city did not show Standley's qualifications and experience, any evidence concerning the radar device's readout should have been excluded."Id.
 {¶ 23} In Helke, we also held as follows:
 Other appellate courts have affirmed speeding convictions where the readout from the radar device had been excluded, but even in those cases, the officer was required to opine how fast the offender's vehicle was traveling and/or produce in depth testimony concerning the officer's training and expertise. (Citations omitted). Even if we were to accept such propositions in this case, the city failed to produce testimony concerning Standley's experience, and Standley did not testify that he had ascertained Helke's speed via any method other than through the radar readout. Accordingly, we find the evidence insufficient to support a conviction for speeding.
Id. at ¶ 11.
 {¶ 24} In the present case, the record reflects that the State presented extensive testimony regarding Sergeant Bennett's experience and qualifications. Bennett testified that she has been employed by the Ohio State Highway Patrol since July 25, 1997. Bennett also testified that she visually observed Yaun's vehicle for approximately a quarter of a mile, gauging its speed, and testified that it appeared to be traveling at a rate over the posted 55 mile per hour speed limit. Specifically, Bennett testified that she estimated Yaun's speed to be 70 miles per *Page 12 
hour prior to activating her radar device and clocking Yaun at the rate of 70 miles per hour.
 {¶ 25} Bennett also testified that she is certified to operate the Python II radar device and that her certification was current on the date of Yaun's traffic stop. Bennett testified that she "received 40 hours of radar training in the academy . . . and spent six months with a field training officer shortly after graduation from the academy." Bennett also testified that she is required to complete yearly recertification training.
 {¶ 26} Additionally, during trial, the court specifically distinguished the facts of the present case from those presented inHelke when the court stated as follows:
 One aspect of the case that does bother me is the fact that the State failed to present a copy of the officer's certification on the use of the radar. * * *
 I find that this case is distinguishable, however, because I will read from the Helke decision. It says in pertinent part: "[a] failure to submit a certificate or a description of the radar operator's training is insufficient to prove he or she was qualified." There was no certificate in this case, but I do find that there was a description of the radar operator's training. And I found that description, unlike most that I hear, to be quite detailed and sufficient in my mind to prove that the officer was qualified to use this particular radar unit.
 However, for future reference, it seems that the safe thing is to have that and introduce it into evidence. But I do find that this case is distinguishable from that reason from the Helke case, so I am going to enter a finding of guilt to the charge of 70 in a 55. . . *Page 13 
(Transcript of October 30, 2007 trial, pp. 23-24).
 {¶ 27} Based on the foregoing, we find that the trial court's ruling in the present case does not conflict with our previous decision inState v. Helke, supra. In Helke, the trial court was presented with little more than a conclusionary assertion that the officer was certified to operate the radar device. In contrast, in the present case the trial court heard specific testimony regarding the nature and extent of Sergeant's Bennett's training and subsequent recertification to operate the Python II radar device. Therefore, we find that the trial court did not err in finding Yaun guilty, even though the State failed to present a copy of Sergeant Bennett's certificate regarding her qualifications to operate the radar device. Accordingly, Yaun's second assignment of error is overruled.
 {¶ 28} Therefore, the October 30, 2007 Order and Judgment Entry of Conviction of the Bellefontaine Municipal Court is affirmed.
Judgment Affirmed.
 PRESTON and WILLAMOWSKI, J.J., concur. *Page 1