[Cite as *State v. Zhovner*, 2013-Ohio-749.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  2-12-13

      v.

ILYA ZHOVNER,                          O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2012 TRD 01541

**Judgment Reversed**

Date of Decision:   March 4, 2013

APPEARANCES:

    *Ilya Naumovich Zhovner,*  Appellant

    *Alexander N. Fowler*   for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Ilya Naumovich Zhovner, appeals the judgment of the Auglaize County Municipal Court finding him guilty of speeding. On appeal, Zhovner contends that the following errors occurred throughout the course of this matter: (1) the trial court erred when it accepted testimony of an unsworn witness; (2) the trial court erred when it accepted testimony concerning the officer's visual estimation of the vehicle's speed, operation of the laser speed detector, as well as the calibration and handling of such device; (3) the trial court erred when it accepted the reliability of the laser speed detector without expert testimony; and (4) that the evidence presented at trial was insufficient to uphold his conviction for speeding. Based on the following, we reverse the trial court's judgment.

{¶2} On the night of March 19, 2012, Officer Jason Barhorst observed a vehicle which appeared to be traveling above the posted speed limit of 65 mph. Officer Barhorst proceeded to take two measurements of the vehicle's speed with a laser speed detector. Based on these measurements, Officer Barhorst stopped the vehicle, which was driven by Zhovner. Officer Barhorst cited Zhovner with speeding in violation of R.C. 4511.21(D)(2).

{¶3} On June 1, 2012, the matter proceeded to a bench trial. Before the State presented its case, Zhovner argued that pursuant to *State v. Miko*, 9th Dist.

No. 07CA0018-M, 2008-Ohio-1991, the trial court could not take judicial notice of the scientific reliability of the laser speed-measuring device used by Officer Barhorst.

{¶4} The State's first and only witness was Officer Barhorst. Officer Barhorst testified that he is employed as an officer with the Ohio State Highway Patrol ("OSHP"), and has been employed as an officer with the OSHP for five years. On the night of March 19, 2012, Officer Barhorst was sitting stationary in his patrol vehicle along I-75 near mile marker 114 in Auglaize County. Officer Barhorst testified that shortly before midnight he observed a vehicle which appeared to be traveling above the posted speed limit of 65 mph. Officer Barhorst testified that he proceeded to measure the vehicle's speed with an "Ultra[lyte] laser number 11" ("Ultralyte laser"). Trial Tr., p. 5. Officer Barhorst testified that the first reading returned a measured speed of 80 mph, while the second reading returned a measured speed of 79 mph. Based on these readings, Officer Barhorst stopped the vehicle and issued its driver, Zhovner, a citation for speeding.

{¶5} Officer Barhorst testified that he was trained and is currently certified to operate the Ultralyte laser used to measure the speed of Zhovner's vehicle. Officer Barhorst testified that he tested the Ultralyte laser before he began his shift on March 19, 2012, and that it was operating properly.

{¶6} During the defense's case-in-chief, Zhovner again argued, among other things, that the trial court could not take judicial notice of the scientific reliability of the Ultralyte laser. In addition to his arguments, Zhovner testified that he had his cruise control set at 65 mph when he was stopped by Officer Barhorst.

{¶7} On June 5, 2012, the trial court filed its judgment entry finding Zhovner guilty of speeding in violation of R.C. 4511.21(D)(2). The trial court ordered Zhovner to pay a fine of $35.00 and court costs, and assessed two points to his Ohio driving record.

{¶8} It is from this judgment that Zhovner filed this timely appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**TO GIVE A TESTIMONY YOU HAVE TO BE SWORN IN, THEREFORE THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ACCEPTING THE TESTIMONY OF THE ONLY WITNESS, THE POLICE OFFICER, WHO WAS NOT SWORN IN, SINCE NO RECORD OF SUCH EVENT COULD BE FOUND IN THE COMPLETE TRANSCRIPT OF THE PROCEEDINGS CONDUCTED IN THAT COURT (TRANSCRIPT, ALL PAGES).**

### Assignment of Error No. II

**IN ITS DECISION, THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ACCEPTING AS ADMISSIBLE A TESTIMONY OF THE POLICE OFFICER**

ON HIS ABILITY TO VISUALLY ESTIMATE THE SPEED OF [sic] MOVING VEHICLE, OPERATION OF A LASER MEASUREMENT DEVICE, CALIBRATION AND HANDLING OF SUCH DEVICE, AND FOLLOWING THE PROPER PROCEDURES REGARDING ACCURACY TESTING, TAKING MEASUREMENTS, AND VERIFICATION OF DEVICE'S PERFORMANCE, WHEN THE WITNESS FAILED TO PRESENT ANY DOCUMENTED PROOF OF HIS ABILITY TO VISUALLY ESTIMATE OF [sic] THE SPEED OF THE MOVING VEHICLE IN THE NIGHT CONDITIONS, BASED SOLELY ON VEHICLE HEAD LIGHTS [sic], WHO FAILED TO PRESENT ANY DOCUMENTED PROOF OF RECEIVING PROPER TRAINING IN THE USE OF THE LASER DEVICE, WHO FAILED TO PRESENT ANY DOCUMENTED PROOF OF THAT DEVICE TO BE CERTIFIED AND IN PROPER WORKING CONDITION, WHO FAILED TO TESTIFY THAT HE EVER TESTED THE LASER DEVICE ON A VEHICLE TRAVELING AT A KNOWN SPEED, WHO HAD NO KNOWLEDGE OF MAINTENANCE LOGS FOR THE LASER DEVICE IN QUESTION, WHO COULD NOT FIRMLY TESTIFY ABOUT THE WHEREABOUTS OF A DEVICE OPERATION MANUAL, IN THE ABSENCE OF ANY JOURNAL ENTRIES, DEVICE DATA LOGS, DEVICE CALIBRATION AND MAINTENANCE RECORD LOGS, ABSENCE OF ANY VIDEO OR PHOTO EVIDENCE, IN SPITE OF SEVERAL FACTUAL DISCREPANCIES DISCOVERED DURING CROSS-EXAMINATION, JUST BASED ON ASSUMPTION THAT A VERBAL TESTIMONY IS SUFFICIENT TO PROVE THAT HE WAS QUALIFIED BY TRAINING AND EXPERIENCE TO OPERATE THE LASER DEVICE AND THAT THE DEVICE ITSELF WAS IN PROPER WORKING CONDITION BEFORE AND AFTER THE INCIDENT.

*Assignment of Error No. III*

IN ITS DECISION, THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY RECOGNIZING "AS

**BEING RELIABLE" (JUDGMENT ENTRY, P. 2) THE DEVICE, IDENTIFIED BY THE WITNESS AS AN "ULTRA LIGHT LASER NUMBER 11" (TRANSCRIPT, P. 5, LINE 15) ALLEGEDLY USED FOR MEASURING THE SPEED OF DEFENDANT'S VEHICLE, IN THE COMPLETE ABSENCE OF EXPERT TESTIMONY WITH RESPECT TO THE DESIGN, METHOD OF OPERATION, RELIABILITY, ACCURACY AND PERFORMANCE TESTING OF THE ABOVE NAMED DEVICE IN REGARDS TO MEASURING SPEED OF THE MOVING VEHICLE.**

*Assignment of Error No. IV*

**IN ITS DECISION, THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO DECLARE THE DEFENDANT GUILTY. GIVEN THE ABOVE ASSIGNMENTS OF ERROR, BOTH THE TESTIMONY OF THE WITNESS AND THE ALLEGED LASER DEVICE SPEED MEASUREMENT READINGS SHOULD HAVE NOT BEEN ACCEPTED AS ADMISSIBLE, AND THEREFORE THE TESTIMONY FAILED TO PROVE THE DEFENDANT WAS SPEEDING.[1]**

{¶9} Before we address the merit of Zhovner's assignments of error, we note that the State argues that this court may not consider two of the five exhibits attached to Zhovner's appellate brief. The first exhibit is a photograph which purportedly depicts the front of Zhovner's vehicle. The other exhibit is a copy of a

---

[1] While Zhovner is a pro se litigant, we must nevertheless emphasize the proper form for an assignment of error. Assignments of error must indicate the purportedly erroneous trial court judgment and provide a *concise* statement of the assignment's basis. *Dieringer v. Sawmiller*, 3d Dist. No. 2-12-04, 2012-Ohio-4880, fn. 3, citing *Russell v. United Missionary Baptist Church*, 92 Ohio App.3d 736, 738 (12th Dist. 1994) (describing the purposes of assignments of error and issues presented); Loc.R. 11(B) ("Assignments of error * * * should be specifically applied to the error claimed."). Zhovner's four paragraph-long assignments of error are clearly not concise and provide an extended outline of argument, which is neither appropriate nor suggested. Future assignments of error should not be presented for our review in this manner.

manual for an Ultralyte 100 laser speed detector. The State contends that since these exhibits were neither proffered nor admitted into evidence during trial this court is precluded from considering the same.

{¶10} Conversely, Zhovner contends that the photograph and manual are properly before this court. First, Zhovner argues that the photograph is properly before this court because Officer Barhorst referred to the front of his vehicle during trial. Second, Zhovner argues that the manual is properly before this court because it was presented to Officer Barhorst during trial.

{¶11} App.R. 9 governs the record on appeal, and provides in relevant part:

> The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases. App.R. 9(A)(1).

Evidence not made part of the record that is attached to an appellate brief cannot be considered by a reviewing court. *E.g.*, *Deitz v. Deitz*, 3d Dist. No. 14-11-06, 2012-Ohio-130, ¶ 8.

{¶12} Review of the record reveals that the photograph and manual were not admitted into evidence during trial. The photograph does not become a part of the record simply because Officer Barhorst referred to the front of Zhovner's vehicle during trial. With respect to the manual, mere presentation of the manual during trial does not make it part of the record. *See Prymas v. Byczek*, 8th Dist.

No. 93470, 2010-Ohio-1754, ¶ 21 (despite reference to a lease agreement throughout the hearing, the lease agreement was not part of the record on appeal because it was not admitted into evidence). Since the manual was neither admitted into evidence nor otherwise made part of the trial court record, it is, consequently, not a part of the record on appeal. Accordingly, the photograph and manual cannot and will not be considered on appeal.

{¶13} Turning our attention to Zhovner's assignments of error, we elect to address his third and fourth assignments of error first since we find them to be dispositive of the matter.

*Assignments of Error Nos. III & IV*

{¶14} In his third and fourth assignments of error, Zhovner contends that the trial court erred when it found the Ultralyte laser to be an accurate and reliable device without hearing expert testimony concerning the accuracy and reliability of the same. As a result, Zhovner argues that the evidence presented by the State was insufficient to convict him of speeding. Conversely, the State argues that the trial court properly took judicial notice of the Ultralyte laser's accuracy and reliability, and consequently did not error when it found the same to be an accurate and

reliable device.[2] We agree with Zhovner.

**{¶15}** To convict an individual of speeding based on a laser device, "there must be evidence introduced at trial that the device is scientifically reliable."[3] *State v. Starks*, 196 Ohio App.3d 589, 2011-Ohio-2344, ¶ 21 (12th Dist.), citing *State v. Palmer*, 1st Dist. No. C-050750, 2006-Ohio-5456, ¶ 10; *see also State v. Helke*, 3d Dist. No. 8-07-04, 2007-Ohio-5483, ¶ 7 (to convict an individual for speeding based on a radar device, the state must prove, among other things, that the device was accurate and reliable), citing *State v. Kirkland*, 3d Dist. No. 8-97-22 (Mar. 2, 1998).

**{¶16}** The scientific reliability of a particular speed-measuring device can be established via expert testimony or judicial notice. *State v. Everett*, 3d Dist. No. 16-09-10, 2009-Ohio-6714, ¶ 6, citing *State v. Yaun*, 3d Dist. No. 8-07-22, 2008-Ohio-1902, ¶ 12. In this matter, the State did not present any expert testimony concerning the scientific reliability of the Ultralyte laser. Rather, the trial court explicitly took judicial notice of the Ultralyte laser's scientific

---

[2] The State contends that we should overrule Zhovner's fourth assignment of error because it does not comply with Local Rule 11(A), which provides, in relevant part, that "[e]ach assignment of error must be separately argued in the briefs unless the same argument, and no other, pertains to more than one assignment of error." While Zhovner could certainly have expounded upon his argument, we find, under the circumstances of this matter, that Zhovner's argument is sufficient and will be considered. Moreover, our disposition of Zhovner's third assignment of error naturally requires us to address the issue raised in his fourth assignment of error, i.e., the sufficiency of the evidence. Accordingly, we find the State's argument unavailing.
[3] Pursuant to R.C. 4511.091(C), which was in effect at the time Zhovner was cited for speeding, Officer Barhorst's visual estimation of Zhovner's speed could not form the basis of his conviction.

reliability. Therefore, we must determine whether the trial court properly took judicial notice of the Ultralyte laser's scientific reliability.

{¶17} Evid.R. 201(B) governs the trial court's ability to take judicial notice of adjudicative facts, and provides:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The scientific reliability of a particular speed-measuring device can be established for future cases by "(1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record." *Yaun* at ¶ 12, citing *City of Cincinnati v. Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, ¶ 10 (1st Dist.). "However, the fact that a court in one jurisdiction has taken judicial notice of a device's accuracy cannot serve as the basis for a court in another jurisdiction to take judicial notice." *Columbus v. Bell*, 10th Dist. No. 09AP-1012, 2010-Ohio-2908, ¶ 14, citing *Columbus v. Dawson*, 10th Dist. No. 99AP-589 (Mar. 14, 2000); *Levine* at ¶ 8, citing *State v. Doles*, 70 Ohio App.2d 35 (10th Dist. 1980); *see also State v. Colby*, 14 Ohio App.3d 291, 291 (3d Dist. 1984) (judicial notice concerning the reliability of the K-55 radar device was improper where neither the trial court nor any appellate court with

jurisdiction over the trial court had previously found the K-55 radar to be scientifically reliable).

{¶18} In its judgment entry, the trial court relied on three cases in taking judicial notice of the scientific reliability of the Ultralyte laser, to wit: *East Cleveland v. Ferell*, 168 Ohio St. 298 (1958); *Cleveland v. Tisdale*, 8th Dist. No. 89877, 2008-Ohio-2807; and, *Upper Arlington v. Limbert*, 138 Ohio Misc.2d 30, 2005-Ohio-7159 (M.C.). None of these cases, however, provide a basis for the trial court to take judicial notice of the scientific reliability of the Ultralyte laser used by Trooper Barhorst.

{¶19} In *Ferell*, the defendant was cited for speeding after a stationary radar device indicated that he was traveling 17 mph over the posted speed limit. The radar device measured the vehicle's speed using the Doppler effect. On appeal, the Ohio Supreme Court affirmed the defendant's conviction, stating that "[w]hile it is agreed that every reasonable doubt about the accuracy of new developments [in speed-measuring devices] should promptly be resolved against them in the absence of expert evidence, there is no longer any such doubt concerning radar." *Ferell* at 302. Accordingly, the court held that "readings of a radar speed meter may be accepted in evidence, * * * without the necessity of offering expert testimony as to the scientific principles underlying them." *Id*. at 303.

**{¶20}** Since *Ferell*, however, appellate courts have repeatedly determined that *Ferell*'s holding is limited to stationary radar devices that measure a vehicle's speed using the Doppler effect. *See State v. Mansour*, 12th Dist. No. CA2010-08-198, 2011-Ohio-4339, ¶ 26 (finding that the holding in *Ferell* was limited to stationary radar devices that measure a vehicle's speed using the Doppler effect); *Yaun*, 2008-Ohio-1902, at ¶ 11 (implicitly recognized finding that the holding in *Ferell* was limited to stationary radar devices that measure a vehicle's speed using the Doppler effect); *State v. Wilcox*, 40 Ohio App.2d 380, 384 (10th Dist. 1974) (finding that the holding in *Ferell* did not extend to moving radar devices that measure a vehicle's speed using the Doppler effect). Consequently, we find that the trial court erred when it relied on *Ferell*, since Officer Barhorst used a laser device to measure the speed of Zhovner's vehicle. As such, *Ferell* cannot be a basis to take judicial notice of the scientific reliability of the Ultralyte laser.

**{¶21}** In *Tisdale*, the defendant argued that the evidence was insufficient to support his conviction for speeding because the state did not present any evidence concerning the scientific reliability of the Genesis radar device used to measure his vehicle's speed. Following authority from other state courts, the court disagreed and concluded that "expert testimony is no longer required to establish the general reliability of radar or laser devices that are used to determine speed." *Tisdale,* 2008-Ohio-2807, at ¶ 18.

**{¶22}** Upon consideration, we find that the trial court erred in relying on *Tisdale*. First, *Tisdale* is distinguishable from this matter. The speed measurement device in *Tisdale* was a radar device not a laser device. Given this manifest difference, we decline to follow *Tisdale*. Furthermore, we question the propriety of *Tisdale*'s holding concerning the scientific reliability of radar and laser speed measurement devices. Particularly, we question whether it was appropriate to take judicial notice of all laser speed measurement devices when the device at issue was a radar device. Given this reservation, we are further disinclined to follow *Tisdale*.

**{¶23}** Second, the Eighth District Court of Appeals recently referred to *Tisdale* as an "outlier" with respect to its holding concerning the reliability of radar and laser speed-measuring devices. *Beachwood v. Joyner*, 8th Dist. No. 98089, 2012-Ohio-5884, ¶ 13. We agree with this assessment, especially in light of the prevailing case law which still requires expert testimony to establish the scientific reliability of a particular speed measurement device where judicial notice of the same is improper. *Id.* at ¶ 15; *Starks*, 196 Ohio App.3d 589, 2011-Ohio-2344, ¶ 21-25; *New Middletown v. Yeager*, 7th Dist. No. 03 MA 104, 2004-Ohio-1549, ¶ 9-11; *Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, ¶ 10-11; *Dawson*, 10th Dist. No. 99AP-589; *Colby*, 14 Ohio App.3d at 291. For these

reasons, *Tisdale* cannot be a basis to take judicial notice of the scientific reliability of the Ultralyte laser.

{¶24} In *Limbert*, the trial court heard expert testimony concerning the scientific reliability of the "Ultralyte LTI 20/20 laser speed detector" and found the same to be reliable. *Id.* at ¶ 2, 6. *Limbert*, however, was decided in a different jurisdiction, and therefore cannot serve as the basis for the trial court to take judicial notice of the scientific reliability of the Ultralyte laser. *Bell,* 2010-Ohio-2908, at ¶ 14.

{¶25} Even if the trial court could take judicial notice of the finding in *Limbert*, doing so would not support the trial court's determination that the Ultralyte laser is scientifically reliable. Particularly, there is no evidence that the Ultralyte laser used in this matter is an "Ultralyte LTI 20/20." In fact, Officer Barhorst testified that he used an "Ultra[lyte] laser number 11" to measure the speed of Zhovner's vehicle. Trial Tr., p. 5. Without evidence that the laser used in this matter is the same as or operated similarly to the laser in *Limbert*, it would be inappropriate for the trial court to take judicial notice of the finding in *Limbert*. *Compare Yaun*, 2008-Ohio-1902, at ¶ 18-19 (trial court did not err in taking judicial notice of the scientific reliability of the Python II radar device when it had previously taken judicial notice of the scientific reliability of the K-55 radar device and heard testimony that the Python II and K-55 radars operate using the same

-14-

Doppler effect principle) *with State v. Freed*, 10th Dist. No. 06AP-700, 2006-Ohio-6746, ¶ 18-19 (previous Franklin County Municipal Court decision finding the "LTI 20/20 laser speed detector" to be scientifically reliable did not provide sufficient grounds to support judicial notice of the accuracy and reliability of an unidentified laser speed detector). Given the foregoing, *Limbert* cannot be a basis to take judicial notice of the scientific reliability of the Ultralyte laser.

**{¶26}** Upon review, we find that the trial court erred when it took judicial notice of the scientific reliability of the Ultralyte laser used by Officer Barhorst. First, there are no reported decisions from the Auglaize County Municipal Court finding the Ultralyte laser or any other laser speed-measuring device that operates via the same scientific principles to be scientifically reliable. *See Yaun* at ¶ 18 ("It is the scientific principle underlying a device's reliability and not the reliability of [a] specific model that renders judicial notice proper."), citing *State v. Wiest*, 1st Dist. No. C-070609, 2008-Ohio-1433, ¶ 12. Second, this court has neither found the Ultralyte laser nor any other laser speed-measuring device that operates via the same scientific principles to be scientifically reliable. Similarly, the Ohio Supreme Court has neither found the Ultralyte laser nor any other laser speed-measuring device that operates via the same scientific principles to be scientifically reliable. Finally, there is no evidence that the trial court has previously heard expert testimony concerning the reliability of the Ultralyte laser

and found the same to be scientifically reliable. In fact, the trial court's judgment entry explicitly states that it "has not received expert testimony as to the reliability of [the Ultralyte laser used by Officer Barhorst]." (Docket No. 18, p. 2). Given the foregoing, we find that the trial court erred when it took judicial notice of the scientific reliability of the Ultralyte laser used by Trooper Barhorst .

{¶27} Given the foregoing, we find that the State presented insufficient evidence to convict Zhovner of speeding. As previously discussed, there must be evidence introduced at trial that the speed measurement device is scientifically reliable in order to convict an individual of speeding. The scientific reliability of a particular speed measurement device may be established via expert testimony or judicial notice. Here, there was no expert testimony concerning the scientific reliability of the Ultralyte laser and the trial court, as previously discussed, erred when it took judicial notice of the scientific reliability of the Ultralyte laser. As a result, the evidence presented at trial was insufficient to convict Zhovner of speeding.

{¶28} Accordingly, we sustain Zhovner's third and fourth assignments of error.

*Assignments of Error Nos. I & II*

{¶29} In his first and second assignments, Zhovner contends that the trial court erred when it accepted Officer Barhorst's unsworn testimony and when it

accepted Officer Barhorst's testimony concerning his ability to operate the Ultralyte laser, respectively. Given our disposition of Zhovner's third and fourth assignments of error, we find his first and second assignments of error to be moot and we decline to address them. App.R. 12(A)(1)(c).

{¶30} Having found error prejudicial to Zhovner herein, in the particulars assigned and argued in his third and fourth assignments of error, we reverse the judgment of the trial court.

***Judgment Reversed***

**PRESTON, P.J. and SHAW, J., concur in Judgment Only.**

**/jlr**