[Cite as *State v. McKay*, 2014-Ohio-2027.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130657 |
| | | TRIAL NO.  C-13TRD-24849 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| TED MCKAY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  May 14, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Lyons & Lyons Co., LPA,* and *Robert Lyons*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Ted McKay appeals his conviction, following a bench trial, for speeding in violation of R.C. 4511.21. Because the trial court took judicial notice of expert testimony in a prior case that did not provide proof of the accuracy and scientific reliability of the Ultralyte laser device, which had been used to measure McKay's speed, and because the state trooper's testimony that he visually estimated McKay's speed at 80 m.p.h in a 65 m.p.h. zone is now statutorily insufficient to convict McKay of speeding, we reverse his conviction and discharge him from further prosecution.

### *Facts and Procedural Posture*

{¶2} On May 29, 2013, Trooper Westhoven was monitoring traffic on I-275. He was using an Ultralyte laser device to check the speed of cars. The posted speed limit was 65 m.p.h. Trooper Westhoven was sitting in his stationary vehicle between the Kellogg Avenue exit and the New Richmond exit when he observed McKay driving a vehicle at a speed he visually estimated to be 80 m.p.h. Trooper Westhoven used an Ultralyte laser to clock McKay's speed, resulting in three separate measurements of 78, 78, and 79 m.p.h. Trooper Westhoven ordered McKay to pull over and issued him a ticket for speeding.

{¶3} The case proceeded to a trial before the court. On direct examination, Trooper Westhoven testified that he had calibrated the laser at the beginning of his shift and it was in good working order. He could not recall if he had testified previously in a Hamilton County court about the results of the Ultralyte device. When asked if he knew what model the laser was, he stated that he was unsure and that he would need to call the patrol post to get that information.

{¶4} Upon cross-examination by McKay's counsel, Trooper Westhoven testified that he was not an expert on speed-measuring devices and he could not testify as to whether the LTI 20-20 and the Ultralyte were the same speed-measuring device. The state then rested.

{¶5} McKay moved pursuant to Crim.R. 29 for an acquittal. He argued that the trial court could not take judicial notice of the scientific accuracy and reliability of the Ultralyte laser device for a number of reasons. First, the trooper could not testify that the Ultralyte laser was the same device as the LTI 20-20. Second, there were no reported Hamilton County Municipal Court cases or First Appellate District opinions discussing the Ultralyte laser; and third, the Hamilton County Municipal Court had not previously heard expert testimony on the Ultralyte laser. The state presented no counterargument. Instead, it submitted the case on the trooper's testimony. The trial court stated that it would take the matter under advisement and issue a decision at a later date.

{¶6} On July 31, 2013, the trial court stated that it had reviewed expert testimony from another Hamilton County Municipal Court case and that it was taking judicial notice of the reliability of the Ultralyte laser based upon the findings in that case. When McKay's counsel inquired about the case, the trial court stated that it thought the case was called "Shoemaker," and that the court's bailiff had a copy of the transcript of proceedings in that case for counsel to review. The trial court then found McKay guilty of speeding and continued the matter for sentencing.

{¶7} McKay filed a motion for reconsideration. Attached to the motion was a copy of the transcript of the case that the trial court had relied upon to take judicial notice of the Ultralyte laser and the trial court's journal entry in that case. McKay argued that the expert testimony in that case did not address the Ultralyte

laser, but only the LTI 20-20 device. The trial court denied the motion. It imposed a $70 fine plus court costs. The trial court stayed McKay's sentence pending this appeal.

### Analysis

{¶8} In his first assignment of error, McKay argues that the trial court erred in finding him guilty of speeding because the state failed to prove the scientific reliability of the speed-measuring device. In his second assignment of error, he contends that trial court erred when it took judicial notice of the scientific reliability of the speed-measuring device without a proper foundation. Because these assignments are interrelated, we address them together.

{¶9} In reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶10} To convict an individual of speeding based upon a laser device, the state must produce evidence at trial that the device is scientifically reliable. *State v. Palmer*, 1st Dist. Hamilton No. C-050750, 2006-Ohio-5456, ¶ 10. Ohio appellate courts, including this court, have held that the scientific accuracy of a laser device used to measure speed is a fact that a trial court may judicially notice. *See Palmer* at ¶ 11, citing *Cincinnati v. Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, 821 N.E.2d 613, ¶ 7 (1st Dist.).

{¶11} In this case, the trial court improperly took judicial notice of the scientific reliability of the Ultralyte laser device based upon expert testimony in another Hamilton County Municipal Court case—*State v. Schumacher*, which had

been decided in 2006. In that case, the Hamilton County Municipal Court heard expert testimony on the reliability and accuracy of the LTI 20-20 speed-detection device.

{¶12} Here Trooper Westhoven testified that he had used an Ultralyte laser device. He could not testify as to the manufacturer of the device or the model and he could not state whether the Ultralyte laser device he had used to measure McKay's speed was the same as the LTI 20-20 device. Without this evidence, the *Schumacher* decision, which addressed only the accuracy and reliability of the LTI 20-20 laser device, could not provide any grounds to support the trial court taking judicial notice of the accuracy and reliability of the Ultralyte laser device used in McKay's case. *See State v. Zhovner*, 2013-Ohio-749, 987 N.E.2d 333, ¶ 24-27 (3d Dist.). As a result, Trooper Westhoven's testimony regarding the readings from the Ultralyte laser device was inadmissible to show that McKay had been speeding.

{¶13} In addition to testifying that he had measured McKay's speed with the Ultralyte device, Trooper Westhoven also testified that he had visually estimated McKay's speed at 80 m.p.h. In *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, the Ohio Supreme Court held that a defendant can be convicted of speeding based solely on a police officer's visual estimation of speed where the evidence shows the officer has training and experience in such visual estimations. The General Assembly, however, has since enacted R.C. 4511.091(C) to negate the Supreme Court's holding in *Barberton*. *See State v. Kincaid*, 5th Dist. Ashland No. 2012-COA-011, 2012-Ohio-4669, ¶ 19-22. R.C. 4511.091(C)(1), which became effective September 30, 2011, expressly provides that no person shall be arrested, charged, or convicted of a violation of the statutes governing speeding

based solely on a police officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley or streetcar. *Id.*

{¶14} Thus, Officer Westhoven's testimony that he had visually estimated the speed of McKay's motor vehicle at 80 m.p.h. is insufficient, by itself, to support McKay's conviction for speeding. *See Beachwood v. Joyner*, 2012-Ohio-5884, 984 N.E.2d 388, ¶ 16-17 (8th Dist.); *see also State v. Zhovner*, 2013-Ohio-749, 987 N.E.2d 333, fn. 3 (3d Dist.).

{¶15} Because the trial court erred in taking judicial notice of the accuracy and reliability of the Ultralyte laser device, Trooper Westhoven's testimony regarding the readings from the device was inadmissible. And because the trooper's visual estimation of McKay's speed was insufficient evidence to demonstrate that McKay had been speeding, no rational trier of fact could have found that the state had proved each element of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, McKay's conviction for speeding is based upon insufficient evidence and must be reversed. *Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, 821 N.E.2d 613, at ¶ 20. As a result, we sustain his two assignments of error, reverse the trial court's judgment, and order McKay discharged from further prosecution in this matter.

Judgment reversed and appellant discharged.

**CUNNINGHAM, P.J.,** and **HILDEBRANDT, J.,** concur.

Please note:
The court has recorded its own entry this date.