[Cite as *State v. Hari*, 2016-Ohio-2987.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,           CASE NO. 14-15-25

      v.

JAYESH K. HARI,                    O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Marysville Municipal Court
Trial Court No. 15 TRD 05322

Judgment Reversed

Date of Decision: May 16, 2016

APPEARANCES:

    *Melissa A. Chase* for Appellant

**SHAW, P.J.**

{¶1} The State of Ohio brings this appeal pursuant to R.C. 2945.67(A) challenging the Marysville Municipal Court's determination that it could not take judicial notice of the reliability of the "Stalker 2X" radar device, which operated using the "Doppler effect," in a speeding case against Jayesh K. Hari ("Hari"). The State does not, and cannot, appeal the underlying acquittal of Hari that resulted from the trial court's determination.

*Relevant Facts and Procedural History*

{¶2} On July 22, 2015, Hari was cited for traveling 40 mph in a 25 mph zone in violation of Village of Unionville Center Ordinance 333.03(C), a minor misdemeanor. Hari pled not guilty to the charge and the case proceeded to a bench trial before the Marysville Municipal Court on August 18, 2015.

{¶3} At trial the State called one witness, Deputy Peter John Lenhardt of the Union County Sheriff's Department. Deputy Lenhardt testified that he was on duty on July 22, 2015, running "stationary radar in Unionville Center." (Tr. at 12). Deputy Lenhardt testified that it was a "nice, sunny day and the children were out playing in the neighborhood, [so he] was trying to work the area and make sure [his] presence was shown so vehicles would slow down." (*Id.*)

{¶4} Deputy Lenhardt testified that he used a "Stalker 2X" radar device in his patrol car, and that he had been using it for two years. (Tr. at 6). Deputy

Lenhardt testified that prior to having the Stalker 2X he used a Python radar device. Deputy Lenhardt testified that both his new and his old radar unit operated using the "Doppler effect." (*Id*.)

{¶5} Deputy Lenhardt testified that he was trained in the operation of radar units and his certification from the Ohio State Highway Patrol was entered into evidence. Deputy Lenhardt testified that his training had been updated multiple times, as indicated on the certificate. Deputy Lenhardt also testified that he had taken additional "Refresher Training" on the use of "Radar/Lidar." (Tr. at 8); (State's Ex. 2).

{¶6} Deputy Lenhardt testified that the Stalker 2X device in his car had been calibrated on March 31, 2015, for its annual calibration, and that the calibration was valid until March 31, 2016. The "Affidavit of Radar Device Certification" was entered into evidence. (State's Ex. 3). Deputy Lenhardt testified that each day when he began his shift and when he ended his shift he checked the radar unit to make sure it was working properly. Deputy Lenhardt testified that he did a calibration check on the radar unit in his vehicle at the beginning of his shift on July 22, 2015, at around 6:45 a.m. and then again at the end of his shift around 3:25 p.m. (Tr. at 11). Deputy Lenhardt testified that the Stalker 2X unit was operating properly at the beginning and end of his shift, and

that there was nothing in the weather that would have interfered with the operation of the radar.

{¶7} As to the incident in question, Deputy Lenhardt testified that he was observing a 25 mph speed zone in Unionville Center running stationary radar when he observed Hari "coming in from the westbound lane * * * from Plain City." (Tr. at 14). Deputy Lenhardt testified that he "visually observed [the vehicle] speeding" and then activated his radar. (*Id*.) Deputy Lenhardt testified that the vehicle was traveling 38 mph and gradually slowed down to 30 mph when it passed him. Deputy Lenhardt testified that the vehicle then started to accelerate again, getting up to 40 mph. Deputy Lenhardt testified that once the vehicle was traveling 40 mph he "locked in the speed." (*Id*.) According to Deputy Lenhardt, the entire time he was "clocking the subject, he was clearly in the 25 mile an hour zone." (*Id*. at 14). Deputy Lenhardt testified that he activated his lights and pursued the white Audi he had clocked. Deputy Lenhardt testified that he cited the driver of the Audi for speeding, who he identified as Hari in the citation and in open court.

{¶8} At the conclusion of Deputy Lenhardt's testimony, the State rested its case. Hari then briefly testified that he did not think he was going "that fast." (Tr. at 19). Hari then rested his case.

{¶9} In its closing argument, the State requested that the trial court take judicial notice of the reliability of the Stalker 2X device and its "Doppler effect" technology based on the Supreme Court of Ohio's decision in *East Cleveland v. Ferell*, 168 Ohio St. 298 (1958) and this Court's decision in *State v. Yaun*, 3d Dist. Logan No. 8-07-22, 2008-Ohio-1902.

{¶10} The trial court found that it could not take judicial notice of the reliability of the Stalker 2X device based on an older decision of this Court, *State v. Wilson*, 3d Dist. Auglaize No. 2-81-24, 1982 WL 6788, *1 (May 6, 1982). The trial court determined that without expert testimony specific to the Stalker 2X device's reliability, the court had to enter a finding of not guilty.

{¶11} A judgment entry memorializing the trial court's not guilty finding was filed August 18, 2015. The State then filed a "Motion for Leave to Appeal" the trial court's decision not to take judicial notice of the reliability of the Stalker 2X radar device. This Court granted the State's motion under R.C. 2945.67 and the cases interpreting it such as *State v. Bistricky*, 51 Ohio St.3d 157 (1990). Having been granted leave to appeal the trial court's legal determination, but not the underlying conviction, the State now asserts the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED WHEN IT DISMISSED THE CASE AFTER REFUSING TO TAKE JUDICIAL NOTICE OF THE ACCURACY OF DOPPLER-EFFECT STATIONARY**

**RADAR DEVICES AND INSTEAD REQUIRED THE STATE-APPELLANT TO PRODUCE EXPERT TESTIMONY ON THE OPERATION OF THE STALKER 2X RADAR SPEED MEASURING DEVICE.**

{¶12} In its assignment of error, the State argues that the trial court erred by refusing to take judicial notice of the accuracy of the Stalker 2X radar device used by Deputy Lenhardt in this case, which Deputy Lenhardt testified operated under the same "Doppler-effect" technology as his previous Python radar.

{¶13} The admissibility of readings from stationary radar devices was considered by the Supreme Court of Ohio in *City of East Cleveland v. Ferrell*, 168 Ohio St. 298 (1958). In that case, the Court acknowledged that the principles of the Doppler effect, which underlie the operation of stationary radar devices, had been long established. *Id.* Additionally, the Supreme Court of Ohio concluded that "readings of a radar speed meter may be accepted in evidence, just as we accept photographs, X-rays, electroencephalographs, speedometer readings, and the like, without the necessity of offering expert testimony as to the scientific principles underlying them." *Id.* at 302-303.

{¶14} To convict a person for speeding using a moving radar device, the State must prove, and the record must contain, (1) expert testimony of construction of the device and its method of operation in determining the speed of the approaching vehicle, (2) evidence that the device is in good condition for accurate work, and (3) evidence that the officer using the device is one qualified for its use

by training and experience. *State v. Yaun*, 3d Dist. Logan No. 8-07-22, 2008-Ohio-1902, ¶ 12 citing *State v. Wilcox*, 40 Ohio App.2d 380, 386 (1974). Establishing the reliability of a speed-measuring device can be accomplished by (1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record. *Yaun* at ¶ 12 (additional citations omitted).

{¶15} In this case testimony was undisputed that the Stalker 2X device used by Deputy Lenhardt was a radar device operating in stationary mode.[1] It is also undisputed that the Stalker 2X operated by utilizing the "[D]oppler effect." (Tr. at 6).

{¶16} In *State v. Yaun*, 3d Dist. Logan No. 8-07-22, 2008-Ohio-1902, ¶ 18, this Court unanimously determined that a trial court could take judicial notice of the reliability of a radar device where the device employs the Doppler effect in stationary mode. In *Yaun*, we reasoned that, "It is the scientific principle underlying a device's reliability—and not the reliability of specific model—that renders judicial notice proper." *Yaun* at ¶ 19, citing *State v. Wiest,* 1st Dist. No. C-070609, 2008-Ohio-1433, ¶ 12. This same reasoning has been cited by multiple other Ohio Appellate Districts where a radar device operates using the Doppler

---

[1] Deputy Lenhardt's testimony indicated that the Stalker 2X could also operate in "moving mode;" however, Deputy Lenhardt's testimony was clear in this case that the radar was operating in stationary mode. (Tr. at 11).

effect and is being used in stationary mode. *Wiest, supra*, at ¶ 12 (1st Dist.); *Shaker Hts. v. Sevayega*, 8th Dist. Cuyahoga No. 98780, 2013-Ohio-589, ¶ 23; *State v. Mansour*, 12th Dist. Butler No. CA2010-08-198, 2011-Ohio-4339, ¶ 26 ("In accordance with the Ohio Supreme Court's holding in *Ferell,* expert testimony was therefore unnecessary to establish a foundation for the general reliability and accuracy of the Stalker Dual SL radar device in stationary mode."); *see also Columbus v. Bell*, 10th Dist. Franklin No. 09AP-1012, 2010-Ohio-2908, ¶ 18.

{¶17} Notwithstanding our decision in *Yaun*, the trial court declined to take judicial notice of the reliability of the Stalker 2X in this case on the basis of one of this Court's older cases, *State v. Wilson*, 3d Dist. Auglaize No. 2-81-24, 1982 WL 6788, *1 (May 6, 1982). In *Wilson*, this Court determined that a trial court could not take judicial notice of the dependability of the "K-55 [radar] device" absent the trial court first hearing expert testimony on the *device* at least once. (*Id.*) Notably nowhere in the *Wilson* opinion is it mentioned that the K-55 radar device used the Doppler effect and thus it is distinguishable from *Yaun* and from this case where in both instances it was explicit that the radar device utilized the Doppler effect. Nevertheless, to the extent that *Wilson* stands for the proposition that judicial notice is device-specific where a radar device is operating using the Doppler effect in stationary mode, we disavow it.

{¶18} We note that some Ohio Appellate Courts have arguably still maintained that judicial notice is device-specific even for radar-based devices operating in stationary mode. *See State v. Carnes*, 5th Dist. Perry No. 14-CA-00029, 2015-Ohio-1633, ¶¶ 8-10;[2] *Beachwood v. Joyner*, 8th Dist. Cuyahoga No. 98089, 2012-Ohio-5884, ¶ 14.[3] We further note that this Court has not extended judicial notice to the reliability of *laser*-based devices absent prior testimony related specifically to the device or a prior court decision finding the laser-based device reliable. *See State v. Zhovner*, 3rd Dist. No. 2-12-13, 2013-Ohio-749, ¶ 23.[4]

{¶19} Nevertheless, as there was clear testimony in this case that the Stalker 2X utilized the Doppler effect and was being operated in stationary mode, we find that the trial court erred by failing to take judicial notice of the reliability of the device. Therefore the State's sole assignment of error is sustained and the judgment of the Marysville Municipal Court is reversed; however, this reversal *does not affect* Hari's acquittal. *See* R.C. 2945.67(A); *Bistricki, supra; State v. Roberts*, 9th Dist. Wayne No. 12CA0001, 2012-Ohio-5018, ¶ 12.

*Judgment Reversed*

**WILLAMOWSKI, J., concurs.**
**ROGERS, J., concurs in Judgment Only.**

---

[2] Similar to our decision in *Wilson*, there is no mention in *Carnes* that the Python II radar speed detecting device in that case utilized the Doppler effect, which would make it distinguishable from this case.
[3] The Eighth District seems to have issued conflicting opinions on this issue.
[4] Two judges concurred in judgment only in *Zhovner*, so the case actually has no precedential value.