[Cite as *State v. White*, 2021-Ohio-4046.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    20AP0037 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JENNIFER WHITE | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No.    2020 TR-D 004930 |

DECISION AND JOURNAL ENTRY

Dated: November 15, 2021

CARR, Judge.

{¶1}   Defendant-Appellant Jennifer White appeals the judgment of the Wayne County Municipal Court.  This Court affirms.

I.

{¶2}   On September 10, 2020, Trooper Andrew Topp, a sergeant with the Ohio State Highway Patrol with 21 years of experience, was observing traffic on U.S. 30 in Plain Township in a marked patrol car.  His vehicle was equipped with a MPH Python II radar device.  He observed a vehicle traveling westbound in the left lane coming towards him.  The speed limit in the area was 60 m.p.h.  Trooper Topp visually estimated that the vehicle was traveling in excess of 70 m.p.h.  He activated his radar device which displayed that the vehicle in question was traveling at speeds of 78, 77, and 75 m.p.h.  He indicated there was a very strong audible tone, which got louder the closer the vehicle was.  As the vehicle passed, the audible tone dropped, and Trooper Topp pursued the vehicle and initiated a traffic stop.  The driver of the vehicle was

identified as White.  Trooper Topp cited White for violating R.C. 4511.21(D)(2) by driving 75 m.p.h. in a 60 m.p.h. zone.

{¶3}  The matter proceeded to a bench trial.  White admitted to speeding but averred that she was only traveling 64 m.p.h.  The trial court found White guilty, fined her $150.00 plus court costs, and assessed 2 points to her license.

{¶4}  White has appealed, raising three assignments of error for our review.  The second and third assignments of error will be addressed together to facilitate our analysis.

II.

**ASSIGNMENT OF ERROR I**

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3 OF THE OHIO CONSTITUTION.

{¶5}  White argues in her first assignment of error that her conviction was against the manifest weight of the evidence.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶6}  This Court has stated that "[t]o sustain a conviction for speeding when the officer clocked the motorist with a speed detection device, the prosecution must prove three things: (1) radar or lidar devices are scientifically accepted as dependable for their purpose; (2) the particular unit was in good working order; and (3) the officer using the device was qualified to do so."  *State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 20.  "A driver cannot be convicted of speeding based solely upon a peace officer's unaided visual estimation of

the speed of a motor vehicle, but testimony related to an officer's visual estimation can be offered in support of a speeding charge." (Internal quotations and citation omitted.) *State v. Upchurch*, 9th Dist. Medina No. 20CA0001-M, 2021-Ohio-94, ¶ 12; *see also* R.C. 4511.091(C)(1).

{¶7} In *Brook Park v. Rodojev*, 161 Ohio St.3d 58, 2020-Ohio-3253, at syllabus, the Supreme Court of Ohio held that:

> The results of a speed-measuring device using either radar or laser technology are admissible in court without expert testimony establishing, or the court taking judicial notice of, the reliability of the scientific principles of that technology. However, the fact-finder is required to determine whether the evidence presented concerning the accuracy of the particular speed-measuring device and the qualifications of the person who used it is sufficient to support a conviction based on the device's results.

{¶8} As noted by the dissent in *Rodojev*, the holding in essence provides "that the state no longer needs to prove the scientific reliability of a laser [or radar] speed-measuring device before the results of such a device can be used to convict a driver of a speeding offense." *Id*. at ¶20 (Kennedy, J., dissenting). While White argues that the State still had to demonstrate that the MPH Python II radar device used in this case was scientifically accepted as dependable for its purpose, we read nothing in *Rodojev* or *Sadeghi* that supports that interpretation. Instead, subsequent to *Rodojev*, this Court must only determine whether the evidence supports the accuracy of the radar device used and the qualifications of the person who used it. *See id.* at syllabus.

{¶9} At trial, Trooper Topp testified to observing White driving her vehicle in excess of 70 m.p.h. in a 60 m.p.h. zone. He then used the radar device in his vehicle to verify the speed. The device displayed readings of 78, 77, and 75 m.p.h. During the traffic stop, Trooper Topp indicated that White expressed concern over how the citation would impact her job. White also

testified in her defense. While she admitted to exceeding the posted speed limit, she averred that she was only going 64 m.p.h.

{¶10} As to his training and experience, Trooper Topp testified that he had been employed by the Ohio State Highway Patrol for 21 years, that for his initial training he spent 6 months at the Ohio State Highway Patrol Training Academy in 1999. During that training he was instructed on how to use different radar detection devices. As to the MPH Python II Radar device in his vehicle, Trooper Topp was trained on it in the Summer of 2000. Trooper Topp testified that since that time he has had ongoing training with respect to radar devices. Trooper Topp also explained his training with respect to visually estimating the speed of a vehicle.

{¶11} Trooper Topp further indicated that, on the day of the traffic stop, when he started his shift, he performed a calibration check using two tuning forks on the radar device. Trooper Topp then provided a detailed account of the calibration check process. Trooper Topp stated that the results of that check were that the radar was working properly. Trooper Topp performed a similar calibration check at the end of the shift, subsequent to stopping White, and the result of that check was that the radar was working properly at the end of the shift. That testimony was not objected to at trial.

{¶12} Accordingly, there was evidence before the trial court that Trooper Topp was qualified to use the radar device at issue and that the device was working properly that day supporting that the results were accurate. *See State v. Bechtel*, 24 Ohio App.3d 72, 73 (9th Dist.1985) ("While generally the accuracy of the radar unit and the accuracy of the testing apparatus are essential to a speeding conviction based solely on the radar evidence, the weight of authority holds that when two tuning forks are used to ascertain the accuracy of the radar unit, additional proof of the accuracy of the tuning forks is not necessary. This is because each tuning

fork corroborates the accuracy of the other, and it is highly unlikely that the radar unit and each tuning fork would be inaccurate to the same degree."); *State v. Mansour*, 12th Dist. Butler No. CA2010-08-198, 2011-Ohio-4339, ¶ 28.

{¶13} While testimony and documents detailing the yearly radar unit certifications for the device were also admitted into evidence, the admission of that evidence is challenged on appeal. Nonetheless, even assuming that that evidence was admitted in error, the weight of the evidence still supports the accuracy of the device as discussed above.

{¶14} In support of her argument that the radar device was not accurate, White points to perceived discrepancies between Trooper Topp's testimony concerning the calibration check he performed and the radar unit certification records. However, a careful review of the records reveals no discrepancy. White also asserts that the State failed to demonstrate that the device was in good working order because there was a prior issue with the device's housing in 2013. However, the trial court stated that it was not considering the evidence related to that issue as it was hearsay, and that conclusion has not been challenged on appeal.

{¶15} White also maintains that the State failed to demonstrate that Trooper Topp was qualified because his initial training, both with respect to visually estimating speed and using the radar device, was too long ago. However, nothing in the record demonstrates that Trooper Topp was not up-to-date with his training. Further, given how long Trooper Topp has been employed by the Ohio State Highway Patrol, it could be reasonably inferred that Trooper Topp has extensive experience using the radar device and visually estimating speed in light of the fact that his stated job duties included enforcing traffic laws.

{¶16} It is true that White contradicted Trooper Topp's testimony and that the trial court stated that it found both witnesses credible; however, that does not require the conclusion that the

verdict is against the weight of the evidence. The trial court also noted that White did not establish the accuracy of her speedometer. Therefore, we cannot say that White has demonstrated that the trial court was unreasonable in giving more weight to Trooper Topp's testimony.

{¶17} After a thorough and independent review of the record, we cannot say that White has demonstrated that trial court's verdict is against the manifest weight of the evidence. White's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF RADAR DEVICE CALIBRATION CHECKS.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN TAKING JUDICIAL NOTICE OF THE SCIENTIFIC RELIABILITY OF THE MPH PYTHON II RADAR DEVICE.

{¶18} White argues in her second assignment of error that the trial court erred in admitting evidence of the yearly radar unit certifications. White argues in her third assignment of error that the trial court erred in taking judicial notice of the scientific reliability of the radar device. The State appears to concede error with respect to both assignments of error but maintains any error is harmless.

{¶19} Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Even assuming that the trial court erred in admitting the evidence concerning the yearly radar unit certifications or in taking judicial notice of the scientific reliability of the radar device, we agree that any error would be harmless. Substantial other evidence supported that the radar device at issue was accurate and in good working order. This evidence has been discussed in detail above. We cannot say that admission

of the evidence, even if improper, impacted White's substantial rights. Further, the Supreme Court in *Rodojev* held that "[t]he results of a speed-measuring device using either radar or laser technology are admissible in court without expert testimony establishing, or the court taking judicial notice of, the reliability of the scientific principles of that technology." *Rodojev*, 161 Ohio St.3d 58, 2020-Ohio-3253, at syllabus. Thus, any error in the trial court taking judicial notice in this case would be harmless as it was unnecessary for the trial court to take judicial notice. *See id.*

{¶20} White has failed to demonstrate reversible error with respect to her second and third assignments of error. White's second and third assignments of error are overruled.

III.

{¶21} White's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

BRIAN A. SMITH, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.