[Cite as *State v. Vidale*, 2024-Ohio-5001.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TERRILL JUSTIN NIGEL VIDALE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0043**

---

Criminal Appeal from the
Mahoning County Court #4 of Mahoning County, Ohio
Case No. 2023 TRD 4775

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*, and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, Mahoning County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Matthew G. Vansuch* and *Atty. Brian A. Coulter*, Brouse McDowell LPA, for Defendant-Appellant.

Dated:  October 15, 2024

**HANNI, J.**

{¶1}   Defendant-Appellant, Terrill Justin Nigel Vidale, appeals from a Mahoning County Court No. 4 judgment finding him guilty of speeding.  Appellant argues the trial court abused its discretion by refusing to sanction the State for failing to provide requested discovery in a timely manner.  For the following reasons, we affirm the trial court's judgment.

{¶2}   On November 6, 2023, Ohio State Highway Patrol Officer Nicholas Cayton issued Appellant a citation for speeding.  The citation alleged Appellant was driving 85 mph on a road with a posted speed of 65 mph.

{¶3}   On December 18, 2023, a pretrial hearing was held.  After no plea agreement was reached, the court scheduled a trial for January 10, 2024.

{¶4}   On December 20, 2023, Appellant filed a request for evidence and discovery.  Among other items, Appellant requested:

> Any written or recorded statement by the Defendant, including, but not limited to police summaries of such statements and the body and dash camera footage up to and including the stop at issue in this case;
>
> . . .
>
> Results of physical or mental examinations, experiments or scientific test, including but not limited to the certification of the laser, radar, or other manner of speed-detecting device used in this case and that of the peace officers or the Ohio State Highway Patrol to operate the same.

{¶5}   On the initial trial date, January 10, 2024, the State did not provide the requested discovery or evidence Appellant requested, so Appellant moved to dismiss the matter. (Pretrial Tr. 3).  The assistant prosecuting attorney indicated that he was unaware of the discovery request and the request should have been presented to him at the pretrial.  He represented that he checked with the state trooper and he asked the court for a continuance so he could provide the defense with the body camera footage from the officer and the dash camera footage of the traffic stop.  He further stated:

Outside of that, we have no other information about any of the other things that he's asking for. They don't exist, they wouldn't exist - - they would not exist. The narrative that he wants is confined to the four corners of the citation, which gives him the weather report in addition to other factual situations, and the troopers sign these tickets under penalty of perjury.

(Pretrial Tr. 4).

{¶6} The trial court denied Appellant's motion to dismiss and granted the prosecution's motion to continue the case to allow for discovery completion. (Pretrial Tr. 4). The court rescheduled the trial for March 20, 2024.

{¶7} In early 2024, the State provided Appellant with the audio and video from the dashboard camera and the citation with Trooper Cayton's notes. No certification information was provided.

{¶8} On the morning of trial, Appellant filed a second motion to dismiss the charge against him or to prohibit the prosecution from soliciting evidence or testimony from any witnesses from the discovery the prosecution failed to provide. The motion was personally served on the assistant prosecuting attorney on that date.

{¶9} Immediately prior to the start of the trial, the assistant prosecuting attorney handed defense counsel the documents defense counsel had requested, which included: the trooper's initial training certificate from the academy; the trooper's annual certification of proficiency in operating electronic speed monitoring devices; and the manufacturer's certification of the calibration of the laser detection device used by the trooper on the day of the traffic stop. These documents were admitted at trial, over defense counsel's objection, as Exhibits A, B, and C. Trooper Cayton testified that his certifications were maintained at the local post so that he could testify in court. (Tr. 14).

{¶10} Before trial began, Appellant's counsel informed the court of his second motion to dismiss and explained that the prosecution was asked to provide "the laser certification and calibration, the officer's certification, all those sorts of things." (Tr. 4). Defense counsel stated that he was told by the assistant prosecuting attorney that those documents did not exist.

{¶11} The record shows that the assistant prosecuting attorney again mischaracterized Appellant's request regarding the certification of the laser. The

Case No. 24 MA 0043

assistant prosecuting attorney believed Appellant was requesting the State provide a "state certification" which does not exist. (Tr. 5). Appellant's counsel pointed out that the request made was not for a state certification, but rather the request was for any certification. (Tr. 5-6). The trial court denied the motion to dismiss or to exclude the evidence and ordered the trial to proceed.

{¶12} At trial, Trooper Cayton testified that on the day in question, he observed Appellant's white passenger car traveling at a speed he believed to be greater than the posted speed limit. (Tr. 11). Importantly, Trooper Cayton testified that he has received updated training on visual observation. (Tr. 12). He further testified to his training and qualifications regarding the use of electronic speed-measuring devices. (Tr. 12-13). Specifically, Trooper Cayton noted that he received 40 hours of initial training, five days to be certified by the Ohio Patrol to run laser radar, and then certification for additional annual training. (Tr. 12-13). The last time Trooper Cayton received training on the use of the laser was June 14, 2023. (Tr. 14).

{¶13} Trooper Cayton highlighted in detail the procedures and step-by-step process he takes each day to ensure his laser is operating correctly and can be placed into service. (Tr. 17-18). He testified that the lasers are calibrated at the manufacturing facility before they are put into service. (Tr. at 15). Exhibit C was presented to Trooper Cayton, which he verified as the certification of calibration that accompanied the laser device he is assigned to and uses. (Tr. 16). He further testified that based on his training, education, and experience, the laser was operating correctly on the day in question. (Tr. 16).

{¶14} Trooper Cayton further detailed the specific procedures he uses at the beginning and end of each shift to place the device into service and ensure its proper operation. (Tr. 17). He also described how he uses the laser while out on patrol. (Tr. 18, 22-23). Trooper Cayton testified that he acted in accordance with the procedures on the date of the offense, and when doing so, he measured the speed of Appellant's vehicle twice, clocking his vehicle at 85 mph and 84 mph. (Tr. 19). Lastly, Trooper Cayton testified that at the conclusion of the traffic stop, Appellant stated that he believed he was going 81 mph. (Tr. 20).

{¶15} On cross-examination, Trooper Cayton explained that if a failure in the laser device was detected upon initiating the device, it would be returned to the manufacturer and internal paperwork would be filed to show it was returned. (Tr. 25). He also explained that he received training on visually estimating the speed of vehicles and he performed a visual estimate of Appellant's vehicle before pulling the trigger on the laser detector. (Tr. 25). He detailed how the laser recorded the first and second checks. (Tr. 25). Trooper Cayton stated he held, then pulled the trigger of the device, and it produced two readings simultaneously. (Tr. 30). However, he conceded that he was not sure for how many seconds he held the trigger. (Tr. 30). He also admitted that no documentation of his first or second detection of Appellant's speed existed, aside from the speeding citation. (Tr. 26). He further admitted that the reading on the laser was not recorded by his body camera. (Tr. 26-27).

{¶16} The trial court found Appellant guilty on the speeding citation. (Tr. 35-36).

{¶17} Appellant timely filed a notice of appeal on April 17, 2024, raising one assignment of error.

{¶18} Appellant's sole assignment or error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY NOT IMPOSING ANY SANCTION ON THE STATE FOR FAILURE TO PROVIDE DISCOVERY IN A TIMELY MANNER.

{¶19} Appellant first asserts that the State willfully violated Crim.R. 16. The Rule provides:

The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it make such other order as it deems just under the circumstances.

Case No. 24 MA 0043

**{¶20}** Appellant asserts that although speed-measuring devices are admissible without expert testimony, Appellant's timely-filed discovery request specifically asked for the State to prove the accuracy of the particular speed-measuring device and the qualifications of the person who used it. Appellant contends that no matter how the assistant prosecuting attorney claims to have misinterpreted the written request ("state certification"), Appellant requested the documents that he expected the State to introduce to meet its burden of proof.

**{¶21}** Appellant emphasizes that the State asserted that the documents he requested, "don't exist, they wouldn't exist – they would not exist". (Pretrial Tr. 4). Thus, Appellant contends he reasonably relied on the assistant prosecuting attorney's representation in his preparation for trial.

**{¶22}** Appellant cites *State v. Darmond*, 2013-Ohio-966, ¶ 29, and notes that Crim.R. 16(A) serves the purpose of providing a just determination of criminal proceedings and to secure the fair, impartial, and speedy administration of justice. Appellant also cites the *Darmond* Court's reiteration of the three factors that govern a trial court's exercise of discretion in imposing a sanction for a prosecutor's discovery violation: (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in preparation of a defense, and (3) whether the accused was prejudiced. *Id.* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d. 442 (1983), syllabus. In addition, Appellant acknowledges that "a court must impose the least severe sanction that is consistent with the purpose of the discovery rules." *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987).

**{¶23}** Appellant contends that *Darmond* supports the conclusion that a lesser sanction would not be consistent with the purposes of the criminal discovery rules. Appellant concedes that the trial court was not required to impose the most severe sanction of dismissal to fulfill the purposes of the criminal discovery rule.

**{¶24}** However, Appellant asserts that the trial court could have just prevented the State from introducing the evidence and testimony into the record. He cites Rule 9(E) of the Mahoning County Criminal Local Rules of Court in support, noting that the court should have excluded from trial the supplemental discovery that the State failed to provide

Case No. 24 MA 0043

seven days before trial unless the court granted leave for good cause shown. *See State v. Treharn*, 2009-Ohio-2638, at ¶ 16 (7th Dist.).

**{¶25}** Appellant continues that without the certification evidence or Trooper Cayton's testimony, the State would not have been able to meet its burden of proof. Appellant also states that even if Appellant's violation was clear, the discovery withheld from him would have benefited him in the preparation for trial and he was prejudiced. *State v. Joseph*, 73 Ohio St.3d. 450, 458 (1995). Appellant also requests that the Court consider the State's initial representation to the court that the requested documents "don't exist" and it is prejudicial for the State to provide evidence material to its case and the preparation of the defendant's defense minutes before trial. *State v. Kasper*, 2009-Ohio-5502, ¶ 24 (6th Dist.).

**{¶26}** Essentially, Appellant contends that the State predicated its case on the documentation it willfully withheld. Appellant asserts that the trial court could have continued the case to give him the opportunity to examine the evidence he received on the morning of trial or the court could have excluded the evidence. Appellant submits that the court abused its discretion because it treated the discovery violation with the "no harm no foul" rule and allowed the State to proceed as if nothing happened.

**{¶27}** This Court has held the following regarding trial court discretion over discovery violations:

> If a discovery violation is brought to the court's attention, the court may order discovery, grant a continuance, prohibit the party from introducing the undisclosed evidence or make some other order it deems just under the circumstances. Crim.R. 16 (E)(3). Under a local rule, discovery violations, including a failure to provide supplemental discovery seven days before trial, will result in undisclosed material being excluded from trial unless the court grants leave for good cause shown. Mah. Cty. Loc. Crim.R. 9(E).
>
> The trial court's decision on these matters, including the decision to deny a mistrial as a remedy for the discovery violation, will not be reversed absent an abuse of discretion. See, e.g., *State v. Garner* (1995), 74 Ohio

St.3d 49, 59 (mistrial in general); *Pang v. Minch* (1990), 53 Ohio St.3d 186, 194 (local discovery rule violation); *State v. Parson* (1983), 6 Ohio St.3d 442, 445 (Crim.R. 16 violation). In exercising its general discretion, the court is to inquire into the circumstances of the discovery violation and impose the least severe sanction consistent with the purpose of the discovery rules, which is to prevent surprise and the secreting of evidence favorable to the other party. *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 3.

In *Parson,* this Court found that the trial court did not abuse its discretion in refusing to exclude undisclosed evidence where: (1) nothing in record showed the lack of disclosure was willful; (2) nothing showed how foreknowledge of the undisclosed statement would have benefited the defense; and (3) the statement's prejudicial effect was not demonstrated where counsel had time to counteract it. *Parson,* 6 Ohio St.3d at 445.

*State v. Treharn*, 2009-Ohio-2638, ¶ 16-18 (7th Dist.).

**{¶28}** "Abuse of discretion" is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable". *State v. Adams*, 62 Ohio St.2d. 151, 157 (1980).

**{¶29}** Here, Rule 9(E) of the Mahoning County Criminal Local Rules of Court requires:

All exchanges of supplemental discovery shall be completed no later than seven days before the day of trial. Matter not provided by either side to the other in violation of this rule shall not be used at trial without leave of Court for good cause shown.

**{¶30}** According to its own Rule, the trial court should have excluded the certification discovery that the prosecution failed to produce seven days before trial. However, the trial court has wide discretion in imposing sanctions for discovery violations and we find that the court did not abuse its discretion by failing to dismiss this case or by allowing this evidence into the trial.

**{¶31}** While the assistant prosecuting attorney should have acted more diligently and clarified the discovery requests, the record shows no conclusive evidence that the assistant prosecuting attorney willfully withheld the requested discovery. It appears that the State's failure to divulge Appellant's discovery requests was based on a lack of knowledge or confusion rather than willful withholding.

**{¶32}** The assistant prosecuting attorney stated at the initial trial date on January 10, 2024, he was unaware that any discovery request had been made and requested a continuance to rectify the discrepancy. (Pretrial Tr. 3-4). Shortly after that hearing, the prosecution produced the dash camera and the body camera footage to Appellant.

**{¶33}** However, the assistant prosecuting attorney did not produce Trooper Cayton's speeding certificate at that time because he believed Appellant was asking for a state certificate which does not exist. On the day of the March 20, 2024 trial, the prosecution produced to Appellant: Trooper Cayton's training certificate from the Highway Patrol Academy certifying him to use electronic speed-measuring devices; the trooper's most recent annual training on his use of electronic speed-measuring devices; and the manufacturer's certificate of calibration for the laser. (Tr. 4). Thus, we find that the assistant prosecuting attorney's lack of disclosure was not willful.

**{¶34}** Further, we disagree with Appellant's assertion that had the trial court barred introduction of the requested discovery, the State would not have met its burden. The Ohio Supreme Court has held:

> the results of a speed-measuring device using either radar or laser technology are admissible in court without expert testimony establishing, or the court taking judicial notice of, the reliability of the scientific principles underlying that technology. However, the factfinder is required to determine whether the evidence presented concerning the accuracy of the particular speed-measuring device and the qualifications of the person who used it is sufficient to support a conviction based on the device's results.

*City of Brook Park v. Rodojev*, 2020-Ohio-3253, ¶ 19.

**{¶35}** We have held that an officer's testimony was both adequate and legally sufficient to establish that a laser device was in working condition and the officer was

properly trained to operate it. *State v. Packer*, 2021-Ohio-4636, ¶ 27 (7th Dist.). In *State v. Pavetic*, 2021-Ohio-4637, ¶ 18 (7th Dist.), we held that the trooper's testimony was sufficient to establish that he was trained to use the device and the device was properly working where he testified that he was trained and proficient on the use of the laser device and he properly checked it for calibration utilizing proper procedures before and after his shift.

**{¶36}** Here, Trooper Cayton, like the trooper in *Pavetic*, testified to his training qualifications regarding the use of electronic speed-measuring devices and to his laser device's proper working order. (Tr. 12-13). He testified that his initial training at the academy involved 40 hours of training, five days to be certified by the Ohio Patrol to run laser radar, and then four years annually every day for additional training. (Tr. at 12-13). He further testified that the last date he received training on the laser was June 14, 2023.

**{¶37}** Trooper Cayton further testified in great detail the procedures and step-by-step process he takes daily to ensure his laser is operating correctly and can be placed into service. (Tr. 17-18). Trooper Cayton affirmed on the day in question that based on his training, education, and experience, the laser device was operating correctly.

**{¶38}** Trooper Cayton also testified as to how he uses the laser on patrol and the procedures he employs to ensure the laser is working from the time it is put into service that day until the time it is taken out of service. (Tr. 18, 22-23). He testified that he acted in accordance with the required laser procedures on the date of the offense, and he measured the speed of Appellant's vehicle twice, clocking his vehicle at 85 mph and 84 mph. (Tr. 19). Lastly, Trooper Cayton testified that Appellant admitted that he believed he was driving 81 mph. (Tr. 20). This speed is well over the posted speed limit.

**{¶39}** Accordingly, we find that Trooper Cayton's testimony sufficed to meet the burden of proof that Appellant was speeding, and the speed certificate was immaterial to meeting this burden. Moreover, Appellant was not prejudiced by the later production of the certification documents as the certificates were valid and updated and Appellant does not assert otherwise. (Tr. 4). Trooper Cayton's testimony as to the certifications of his training on the device and the certification of the device itself sufficed to establish his training on the laser device and the proper working order of the laser device.

{¶40} Accordingly, Appellant's sole assignment of error lacks merit and is overruled.

{¶41} For the reasons above, the trial court's judgment is affirmed.

Waite, J., concurs.

Dickey, J., concurs.

[Cite as *State v. Vidale*, 2024-Ohio-5001.]

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court #4 of Mahoning County, Ohio is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**