[Cite as *State v. Shamansky*, 2023-Ohio-405.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,    CASE NO.  16-22-05

 v.

SAMUEL H. SHAMANSKY,    **O P I N I O N**

 DEFENDANT-APPELLANT.


Appeal from Upper Sandusky Municipal Court
Trial Court No.  TRD 2201887

**Judgment Affirmed**

**Date of Decision:  February 13, 2023**


**APPEARANCES:**

 *Samuel H. Shamansky,* **Appellant**

 *Benjamin C. Buckland* **for Appellee**

**MILLER, P.J.**

{¶1} This appeal, having been placed on the accelerated calendar, is sua sponte being assigned and considered on the regular calendar pursuant to Loc.R. 12(1). Under the authority of Loc.R. 12(5), we have elected to issue a full opinion in lieu of a judgment entry.

{¶2} Defendant-appellant, Samuel H. Shamansky, appeals the June 28, 2022 judgment of sentence of the Upper Sandusky Municipal Court. For the reasons that follow, we affirm.

{¶3} On May 26, 2022, Trooper Brett Hannum of the Ohio State Highway Patrol cited Shamansky under R.C. 4511.21(D)(3) for speeding in a 65-m.p.h. zone. Trooper Hannum visually estimated Shamansky's speed at approximately 80 m.p.h. Trooper Hannum's BEE III speed-measuring device clocked Shamansky's speed at 80 m.p.h. Shamansky pleaded not guilty and the case proceeded to trial before the court. At the conclusion of the trial, the trial court found Shamansky guilty, ordered him to pay a $75 fine, and assessed two points to Shamansky's driver's license. Shamansky then timely filed a notice of appeal, raising the following three assignments of error for review:

> **1. Appellant was convicted in the absence of evidence sufficient to support a finding of guilty in violation of his right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.**

**2. Appellant's conviction was against the manifest weight of the evidence in violation of his right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.**

**3. The trial court's failure to strike Trooper Hannum's testimony or dismiss the case constituted plain error in violation of Appellant's rights as guaranteed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution and comparable provisions of the Ohio Constitution.**

**A. Shamansky's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.**

{¶4} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address each legal concept individually.

{¶5} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶6} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶7} Shamansky first argues that his conviction is not supported by sufficient evidence because (1) the State did not establish that the scientific principles underlying Trooper Hannum's BEE III unit are reliable and (2) the State did not establish that Trooper Hannum was qualified to use his BEE III unit or that his specific BEE III unit was accurate. To give context to Shamansky's argument, we note that the Supreme Court of Ohio has recently instructed:

> The results of a speed-measuring device using either radar or laser technology are admissible in court without expert testimony establishing, or the court taking judicial notice of, the reliability of the scientific principles of that technology. However, the fact-finder is required to determine whether the evidence presented concerning the accuracy of the particular speed-measuring device and the qualifications of the person who used it is sufficient to support a conviction based on the device's results.

*Brook Park v. Rodojev*, 161 Ohio St.3d 58, 2020-Ohio-3253, syllabus.

{¶8} To begin, Shamansky maintains that the State never established that a BEE III unit utilizes either radar or laser technology, with Trooper Hannum only "colloquially referr[ing] to the device as '[his] radar.'" (Appellant's Brief at 10). However, it is clear from the entirety of Trooper Hannum's testimony that the BEE III uses radar technology to measure speed. At various times, Trooper Hannum referred to the BEE III's "radar lobes." (June 28, 2022 Tr. at 8, 11, 17-18). Furthermore, when reading from the purported BEE III operator's manual on cross-examination,[1] Trooper Hannum indicated that the manual describes the BEE III as a "[m]oving radar unit[]" or a "radar." (June 28, 2022 Tr. at 26-27). Accordingly, we are satisfied that the BEE III uses radar technology and that the results of Trooper Hannum's BEE III unit were therefore admissible without expert testimony or judicial notice regarding the reliability of the scientific principles underlying its technology.

{¶9} As for Shamansky's argument that Trooper Hannum was not qualified to use his BEE III unit, this claim is clearly belied by the record. Trooper Hannum testified that he had received 40 hours of training in the use of speed-measuring

---

[1] The manual itself was not made part of the record, but the State did not challenge the authenticity of the document Shamansky provided to Trooper Hannum or object to Trooper Hannum reading it into the record. Therefore, we proceed under the assumption that Trooper Hannum's testimony accurately reflects the contents of the BEE III manual.

devices at the Ohio State Highway Patrol Academy. (June 28, 2022 Tr. at 21). He stated that the course "consist[ed] of how to properly install [a] radar unit into [a] patrol car; * * * how to properly use it; * * * confidence checks; and then also * * * a practical exercise where you have to go out and visually estimate speeds." (June 28, 2022 Tr. at 21). Trooper Hannum testified that he successfully completed the training in 2011 or 2012, that he had been recertified on the use of speed-measuring devices in April 2021, and that his recertification remained valid. (June 28, 2022 Tr. at 22). A copy of Trooper Hannum's certification was admitted as Exhibit A. In addition, Trooper Hannum testified that he had been using a BEE III unit since 2015 and that the BEE III unit he was using on May 26, 2022, had been in his patrol vehicle for just over a year. (June 28, 2022 Tr. at 19, 23). He stated that he uses his BEE III unit for "anywhere between 5 to 15 traffic stops" per road patrol shift and that he averages 8-10 days of road patrol per month. (June 28, 2022 Tr. at 20). Consequently, Trooper Hannum was doubtlessly qualified to operate his BEE III unit.

{¶10} Finally, Shamansky maintains that the State did not demonstrate that Trooper Hannum's particular BEE III unit was accurate because "the State failed to present sufficient evidence that Trooper Hannum's confidence check was conducted properly or that he operated the device in a manner consistent with the manufacturer's manual." (Appellant's Brief at 10-11). Trooper Hannum testified

that he performed a confidence check on his BEE III unit at the beginning of his shift on May 26, 2022. (June 28, 2022 Tr. at 14). Trooper Hannum outlined the entire procedure and stated that he performed the confidence check in the manner that he was trained. (June 28, 2022 Tr. at 14-19, 23-26). However, when Trooper Hannum read from the purported BEE III manual during cross-examination, it became apparent that one step of the confidence-check procedure involving tuning forks, although conducted in conformity with Trooper Hannum's training, was not conducted as directed by the manual. (June 28, 2022 Tr. at 27-29). Even so, Trooper Hannum testified that the confidence check he performed indicated that his BEE III unit was in proper working order. (June 28, 2022 Tr. at 20). Here, when viewed in a light most favorable to the State, Trooper Hannum's testimony about the confidence-check procedure he employed and his statement that he found his BEE III unit to be in good working order are sufficient evidence of the device's accuracy. *See State v. Pavetic*, 7th Dist. Mahoning No. 21 MA 0076, 2021-Ohio-4637, ¶ 16-18. The apparent deviation from the manual's instructions goes not to the sufficiency of the evidence but "to whether or not [the] results should be trusted." *Id.* at ¶ 24. Thus, we conclude that sufficient evidence supports Shamansky's conviction for speeding. However, the variance between the procedure outlined in the purported BEE III manual and the procedure actually used

is relevant to Shamansky's manifest-weight-of-the-evidence argument, to which we now turn. *See id.* at ¶ 24-25.

**{¶11}** Certainly, the discrepancy between the confidence-check procedure indicated by the manual and the procedure actually performed introduces some question whether the BEE III's results should be trusted and, therefore, whether Shamansky's conviction is against the manifest weight of the evidence. However, doubts about whether Trooper Hannum's BEE III unit accurately measured Shamansky's speed are erased by Trooper Hannum's testimony that his visual estimation of Shamansky's speed was consistent with his BEE III's measurement. (*See* June 28, 2022 Tr. at 8-12). Here, we note that although "'[a] driver cannot be convicted of speeding based solely upon a peace officer's unaided visual estimation of the speed of a motor vehicle, * * * testimony related to an officer's visual estimation can be offered in support of a speeding charge.'" *State v. White*, 9th Dist. Wayne No. 20AP0037, 2021-Ohio-4046, ¶ 6, quoting *State v. Upchurch*, 9th Dist. Medina No. 20CA0001-M, 2021-Ohio-94, ¶ 12. Accordingly, if Trooper Hannum was properly qualified to visually estimate the speed of a moving vehicle and he was deemed to be credible, Trooper Hannum's testimony could appropriately be used to bolster the results of the confidence-check procedure, thereby contributing to a finding that his BEE III unit was reliable and that it accurately measured Shamansky's speed.

{¶12} As suggested above, Trooper Hannum was clearly qualified by his training and experience to visually estimate the speed of a moving vehicle. The only remaining issue is his credibility. "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. Notwithstanding Shamansky's arguments to the contrary, we find nothing in Trooper Hannum's testimony or in the background of this case that persuades us that the trial court erred by crediting Trooper Hannum's testimony. Consequently, giving credence to Trooper Hannum's visual estimation of Shamansky's speed, Trooper Hannum's testimony lends support to a finding that his BEE III unit was reliable and accurate at the time in question. Similarly, we have no basis for rejecting Trooper Hannum's testimony that the readout on his BEE III unit indicated that Shamansky was traveling 80 m.p.h. (*See* June 28, 2022 Tr. at 11). Thus, we conclude that Shamansky's conviction for speeding is not against the manifest weight of the evidence.

{¶13} Shamansky's first and second assignments of error are overruled.

**B. The record does not support that Shamansky was denied his rights to due process.**

{¶14} Lastly, we consider Shamansky's argument that his due-process rights were violated when the State failed to preserve material, potentially exculpatory evidence. Specifically, Shamansky contends that Trooper Hannum unreasonably and without justification refused (1) to allow him to personally view the readout on Trooper Hannum's BEE III unit; (2) to take a photograph of the readout with Trooper Hannum's cell phone; and (3) to take a photograph of the readout with his own personal cell phone. He maintains that Trooper Hannum thus "utterly failed to preserve this vital evidence" and that it "was the State's burden at trial to demonstrate that the BEE III readout was not materially exculpatory." (Appellant's Brief at 14). However, from the record, it appears that the BEE III readout registering Shamansky's speed was not even available for preservation at the time of Shamansky's requests. Trooper Hannum explained that as Shamansky's vehicle passed by, "the 80 miles per hour * * * went away, and then the counting unit then calculated the next vehicle." (June 28, 2022 Tr. at 11). Moreover, there is no indication in the record that Shamansky's speed was "locked in" the display of the BEE III unit in any way that it could have been shown to Shamansky or photographed. Further, Trooper Hannum testified he was unaware whether the measurement of Shamansky's speed was logged in such a way that it could be retrieved from the unit at a later time. Therefore, lacking any concrete showing that

-10-

the evidence identified by Shamansky was even available for preservation, we cannot conclude that Shamansky's due-process rights were violated.

{¶15} Shamansky's third assignment of error is overruled.

{¶16} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Upper Sandusky Municipal Court.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**